UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TORREY L. MACKEY, *Pro Se*, )
)
Plaintiff, )
)
v. )            No. 3:15-CV-142-PLR-HBG
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
Defendant. )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the
Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation
regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment and
Memorandum in Support [Docs. 22] and the Defendant's Motion for Summary Judgment and
Memorandum in Support [Docs. 25 & 26]. Torrey L. Mackey ("the Plaintiff") seeks judicial
review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the
Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On January 4, 2010, the Plaintiff filed an application for disability insurance benefits
("DIB") and supplemental security income ("SSI"), claiming a period of disability which began
August 1, 2006. [Tr. 157]. After his application was denied initially and upon reconsideration,
the Plaintiff requested a hearing. [Tr. 93]. On August 27, 2013, a hearing was held before the
ALJ to review determination of the Plaintiff's claim. [Tr. 25-58]. On January 13, 2014, the ALJ
found that the Plaintiff was not disabled. [Tr. 9-27]. The Appeals Council denied the Plaintiff's
request for review [Tr. 1-5]; thus, the decision of the ALJ became the final decision of the
Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint on February 25, 2015, in the United States District Court for the Southern District of Florida, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. Due to the Plaintiff residing within the jurisdiction of the United States District Court for the Eastern District of Tennessee at the time the Complaint was filed, the case was electronically transferred to this District on March 31, 2015. [Docs. 5, 6 & 7]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since August 1, 2006, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: disorder of the back and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift, carry, and push/pull 10 pounds frequently and 20 pounds occasionally. The claimant can sit for 6 hours in an eight hour workday with normal breaks. The claimant requires a sit-stand option on an hourly basis at his work station. He is also unable to climb ropes, ladders, or scaffolds. The claimant can

2

occasionally climb ramps and stairs. The claimant can frequently balance and occasionally kneel, crouch, crawl, and stoop. As for his environmental limitations, the claimant should avoid all exposure to heavy vibrations and concentrated exposure to hazardous machinery and unprotected heights. Mentally, the claimant is unable to perform jobs requiring high production quotas.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 26, 1974 and was 31 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 14-21].


## II.     DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for

DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an

application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an

3

individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), § 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

> 5. Even if claimant's impairment does prevent him from doing his

4

past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).


III.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a

5

different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    POSITIONS OF THE PARTIES

Liberally construing the Plaintiff's *pro se* motion for summary judgment, the Court finds that the Plaintiff raises four main allegations of error on appeal. First, the Plaintiff argues that the ALJ failed to properly consider the causation of his impairments. [Doc. 22 at 4-5, 6, 9]. Second, the Plaintiff contends that the ALJ improperly concluded that his impairments did not meet the criteria of a listing. [Id. at 3]. Next, the Plaintiff maintains that the ALJ's residual

6

functional capacity ("RFC") determination is not supported by substantial evidence by challenging the testimony offered by medical expert Peter M. Schosheim, M.D., the ALJ's credibility finding, and the ALJ's assessment of a psychological evaluation conducted by Nicola Chung, Ph.D. [Id. at 3-8]. Finally, the Plaintiff asserts that substantial evidence fails to support the ALJ's finding that other work exists within the national economy that the Plaintiff is capable of performing. [Id. at 7-8].

The Commissioner responds that substantial evidence supports the ALJ's decision in this case. The Commissioner submits that the ALJ properly evaluated the Plaintiff's impairments consistent with agency regulations and policies, which does not require that the ALJ consider the cause or reason for an alleged impairment. [Doc. 26 at 4-5]. In addition, the Commissioner maintains that the ALJ properly considered the relevant listing of impairments, and that substantial evidence supports the ALJ's conclusion that the Plaintiff's impairments are not of listing level severity. [Id. at 5-8]. Further, the Commissioner argues that the ALJ's RFC determination was based upon proper consideration of the Plaintiff's credibility, the medical source opinions of record, as well as other evidence within the record. [Id. at 8-12]. Lastly, the Commissioner contends that the ALJ properly considered vocational factors, as well as vocational expert ("VE") testimony, in determining that other work exists in the national economy that the Plaintiff is capable of performing. [Id. at 13-14].

## V.    ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A.    Causation of the Plaintiff's Impairments

As a threshold matter, the Court finds it necessary to first address the Plaintiff's causation

argument, which is intertwined with the Plaintiff's contention that the ALJ and this Court should consider the merits of other civil litigation involving the Plaintiff. Specifically, the Plaintiff explains that while he was briefly jailed in Florida in 2006, he was assaulted by several correctional officers which gave rise to his alleged disabling impairments. [Doc. 22 at 1]. The Plaintiff testified during the administrative hearing that he sustained a back injury from the alleged assault [Tr. 35], and an internal investigation report regarding the matter has been made part of the administrative record [Tr. 399-433]. In his brief, the Plaintiff explains that he brought suit against the correctional officers and jail for civil rights violations, but that the case was ultimately dismissed at the trial and appellate court levels. [Doc. 22 at 4-5, 8-9].

The Plaintiff argues that the disability determination is void of any discussion as to "how" he was injured, asserting that the ALJ failed to consider the circumstances giving rise to his impairments, as well as the alleged civil rights violations committed by the correctional officers. [Id. at 3-4, 8-10]. The Plaintiff asks the Court to take action in this case that would procure a settlement in, or at least reopen, the previous litigation regarding the Plaintiff's civil rights action. The Commissioner responds that causation, *i.e.*, the "reason the impairments begin," is not a factor that is considered in adjudicating disability claims, and that this Court has no jurisdiction to take any action in other civil matters involving the Plaintiff. [Doc. 26 at 5].

The Court agrees with the Commissioner in both regards. As to causation, the source of the Plaintiff's impairments is immaterial to the adjudication of disability benefits as well as the Court's review of the Commissioner's final decision. The Sixth Circuit Court of Appeals has explained that "[t]he origin of such pain is, for purposes of ascertaining disability under the Social Security Act, immaterial, since pain resulting from the one source is just as real to a claimant and just as disabling as that resulting from the other." Combs v. Gardner, 382 F.2d 949,

8

956 (6th Cir. 1967). Similarly, "[i]t is likewise immaterial that the exact cause of a disabling impairment be ascertained." Id. Moreover, the regulations which set forth the evaluation process for adjudicating disability claims does not take into account how an impairment originated. 20 C.F.R. §§ 404.1520, 416.920.

Additionally, the Court has no authority to review matters regarding the Plaintiff's lawsuit against the correctional officers and jail, nor may the Court reopen that case. The present matter is before the Court for judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. Section 405(g) only permits judicial review of a "final decision of the Commissioner of Social Security" by which the Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the *decision of the Commissioner of Social Security*." 42 U.S.C. § 405(g) (emphasis added).

Accordingly, the Court finds that the Plaintiff's allegations that the ALJ erred in not considering the cause of his impairments, as well as the Plaintiff's request that this Court take some sort of remedial action with regard to his civil rights case, is not well-taken.


**B.  Listings 1.04 and 12.06**

Next, the Plaintiff challenges the ALJ's finding that the Plaintiff's back and anxiety disorders, impairments that were both found to be severe by the ALJ, did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Doc. 22 at 3]. The Plaintiff argues that because both impairments were found to be severe by the ALJ at step two, the ALJ's step two finding contradicts his step three finding that neither impairment, either singularly or in combination, meets or medically equals a listed impairment. [See id.].

The Court finds that the Plaintiff misunderstands the evaluation process of steps two and

three.    At step two, "the ALJ must find that the claimant has a severe impairment or impairments" to continue to the next step of the sequential evaluation.  Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88 (6th Cir. 1985).  To be severe, an impairment or combination of impairments must "significantly limit[] your physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  Step two has been described as "a *de minimis* hurdle" in that an impairment will be considered non-severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  Higgs v. Brown, 880 F.2d 860, 862 (6th Cir. 1988) (citing Farris, 773 F.2d at 90).  If the claimant is found to have a severe impairment at step two, the ALJ proceeds to step three, in which the ALJ must then determine whether the impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1.  Walters, 127 F.3d at 529; Foster v. Halter, 279 F.3d 348, 352 (6th Cir. 2001).  Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."  20 C.F.R. §§ 404.1525(c), 416.925(c).   Only when an impairment satisfies *all* of the listing's criteria will the impairment be found to meet a listing.  §§ 404.1525(d), 416.925(d).  In other words, a claimant's "impairment(s) cannot meet the criteria of a listing based only on a diagnosis."  Id.  The claimant bears the burden of proof at both steps.  Walters, 127 F.3d at 529.

Here, while the Plaintiff's back and anxiety disorders were found to be severe impairments at step two, this is simply not enough to meet or medically equal a listed impairment at step three.  See Foster, 279 F.3d at 354 ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").  Instead, the ALJ was obligated at step three to consider whether the evidence of record demonstrated that the Plaintiff's back and anxiety disorders were of listing

level severity. See Oddo v. Astrue, No. 5:12-CV-00532, 2012 WL 7017622, at *5 (N.D. Ohio Dec. 10, 2012) (explaining "that finding an impairment is 'severe' at Step Two does not mandate a *per se* finding that such an impairment imposes a significant work related limitation under [the Listings, but] the ALJ should, at least, discuss the distinction between the two") (citation omitted). The ALJ found that they were not. Thus, the Court's analysis turns to whether substantial evidence supports the ALJ's step three finding. The Court finds in the affirmative.

The relevant listings in this case are Listing 1.04 – Disorders of the Spine, and Listing 12.06 – Anxiety Related Disorder. With regard to the Plaintiff's back impairment, Listing 1.04 provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or athology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in

1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04. In order to prove that he meets or equals Listing 1.04, the Plaintiff must first demonstrate that he has a disorder of the spine that results in compromise of a nerve root. In addition, the Plaintiff must prove that his disorder is accompanied by all of the symptoms described in paragraphs A, B, or C.

In this case, the ALJ found that the Plaintiff did not meet the criteria for Listing 1.04. [Tr. 15]. Substantial evidence supports the ALJ's conclusion as MRIs performed in 2009 and 2011 do not demonstrate the requisite compromise of a nerve root or spinal cord. [Tr. 15, 440, 470]. Moreover, there is no evidence within the record of symptoms described in paragraphs B and C. As to paragraph A, the ALJ properly observed [Tr. 15] that the criteria was not satisfied due to the Plaintiff demonstrating normal gait, normal sensation and reflexes, and an ability to perform straight leg raises (in the supine and sitting positions) without pain. [Tr. 449, 487]. Finally, the ALJ properly relied upon the testimony offered by medical expert Dr. Schosheim who opined during the administrative hearing that the Plaintiff did not meet Listing 1.04A because the evidence of record, including the Plaintiff's most recent MRI in 2011, failed to demonstrate "findings of any neurological deficits." [Tr. 52]. While the Plaintiff challenges Dr. Schosheim's qualifications, which this Court will address more fully below, the Court finds that the ALJ was permitted to rely on medical expert testimony that opined upon the nature and severity of the Plaintiff's back impairment in determining whether the impairment met or equaled Listing 1.04A. 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii); see Swett v. Comm'r of Soc. Sec., 886 F. Supp. 2d 656, 661 (S.D. Ohio 2012) ("A medical expert's opinion, based on a review of the complete case record, can constitute substantial evidence."). Therefore, the Court finds that substantial evidence supports the ALJ's finding with regard to Listing 1.04.

12

As to Listing 12.06, the listing provides, in pertinent part, the following:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> A. Medically documented findings of at least one of the following:
>   1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>     a. Motor tension; or
>     b. Autonomic hyperactivity; or
>     c. Apprehensive expectation; or
>     d. Vigilance and scanning;
>   or
>   2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
>   3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
>   4. Recurrent obsessions or compulsions which are a source of marked distress; or
>   5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
>
> AND
>
> B. Resulting in at least two of the following:
>   1. Marked restriction of activities of daily living; or
>   2. Marked difficulties in maintaining social functioning; or
>   3. Marked difficulties in maintaining concentration, persistence, or pace; or
>   4. Repeated episodes of decompensation, each of extended duration.
>
> OR
>
> C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.06. Thus, to satisfy this listing, the Plaintiff must

satisfy the requirements of paragraphs A and B or of paragraphs A and C.

13

The ALJ concluded that the Plaintiff did not satisfy the paragraph B criteria, because he only presented mild to moderate limitations within the areas of activities of daily living, social functioning, and maintaining concentration, persistence, or pace, and demonstrated no episodes of decompensation. [Tr. 15]. To support his findings, the ALJ primarily relied upon the Plaintiff's Function Report, completed on November 7, 2011, and a psychological evaluation conducted by Dr. Chung on November 22, 2011. Specifically, the Plaintiff related that he was able to maintain personal hygiene, he could cook a little, he could drive short distances, he had friends, and he could follow written and oral instructions "pretty good." [Tr. 354, 494]. In addition, Dr. Chung found that the Plaintiff demonstrated fair insight, intact abstract reasoning skills, the ability to concentrate, and the ability to exhibit appropriate social judgment. [Tr. 493-94]. With regard to the paragraph C criteria, the ALJ found no evidence within the record that the Plaintiff demonstrated an inability to function independently outside of the home. [Tr. 16].

The Court finds the ALJ properly relied upon the Plaintiff's Function Report and Dr. Chung's findings in concluding that Listing 12.06 was not satisfied. The Plaintiff presents no evidence to the contrary and only argues that he satisfies the listing by virtue of his anxiety being classified as a severe impairment at step two. A review of the Plaintiff's medical records demonstrates no complaints of or treatment for a mental impairment, and no medical source has opined that the Plaintiff suffers from marked restriction of activities of daily living, marked difficulties in maintaining social functioning, or marked difficulties in maintaining concentration, persistence, or pace. Likewise, the Plaintiff does not allege, and the record does not substantiate, an inability to function independently outside of the home. Because the Plaintiff has failed to demonstrate that his anxiety satisfies all of the criteria of paragraphs A and B or of paragraphs A and C, the Court finds that substantial evidence supports the ALJ's finding with regard to Listing

14

12.06.

Accordingly, the Court finds the Plaintiff's assignment of error in this regard is without merit.

## C. RFC Determination

The Plaintiff further challenges the ALJ's RFC determination by arguing that the ALJ: (1) improperly credited the opinion of medical expert Dr. Schosheim, (2) failed to adequately consider his inability to obtain medical care, and (3) overlooked Dr. Chung's diagnosis of dysthymic disorder and post-traumatic stress disorder ("PTSD"). [Doc. 22 at 3-8].

"The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments." Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 240 (6th Cir. 2002). Therefore, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. Feb. 9, 2007).

The ALJ is responsible for making an RFC determination after reviewing all the relevant evidence in the record. Rudd v. Comm'r of Soc. Sec., No. 12-6136, 2013 WL 4767020, at *8 (6th Cir. Sept. 5, 2013). This includes a review of both medical and non-medical evidence. Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). A court will not disturb an ALJ's RFC determination so long as the finding is supported by substantial evidence. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003).

### 1. *Medical Expert Peter Schosheim, M.D.*

The Plaintiff challenges Dr. Schosheim's qualifications as a medical expert, arguing that there is no evidence demonstrating that the physician has any expertise treating back impairments. [Doc. 22 at 3]. Additionally, the Plaintiff argues that Dr. Schosheim's testimony: is contradicted by his current neurologist; is biased; is not credible given the short timeframe he was able to observe the Plaintiff during the hearing; and fails to take into consideration Dr. Chung's diagnoses of dysthymic disorder and PTSD. [Id. at 4-6, 8].

The regulations permit the ALJ to "ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii). A "medical expert" is a nonexamining physician who is able to provide a medical opinion with regard to a claimant's disability claim. §§ 404.1520, 416.920. While the ALJ is not bound by their opinions, medical experts are highly qualified physicians and medical specialist who are experts in the evaluation of Social Security disability. §§ 404.1527(e)(2)(i), 416.527(e)(2)(i).

In the present matter, the Court observes that Dr. Schosheim's testimony [Tr. 49] and curriculum vitae [Tr. 139-44] demonstrate that he is a board certified orthopedic surgeon. Therefore, the Court finds that he was well qualified to opine on the nature and severity of the Plaintiff's back impairment. Moreover, during the administrative hearing, Plaintiff's counsel stated she had no objection to Dr. Schosheim serving as a medical expert in this case. [Tr. 49].

The Court also finds that Dr. Schosheim's testimony was objective and well-supported by the record. Contrary to the Plaintiff's contention, Dr. Schosheim did not solely base his opinion on the limited interaction he had with the Plaintiff during the hearing. Rather, Dr. Schosheim's testimony was based upon the Plaintiff's testimony and a review of the entire medical evidence

16

of record. [Tr. 49]. Based upon a complete review of the record, Dr. Schosheim concluded that the Plaintiff had back pain with left leg radiculopathy with no neurological deficits or findings, and therefore, he did not meet Listing 1.04A. [Tr. 51-52]. Dr. Schosheim proceeded to opine on the Plaintiff's physical limitations, which are the same limitations that makeup the Plaintiff's RFC. [Tr. 16, 52-53]. The ALJ assigned "great weight" to Dr. Schosheim's opinion, explaining that Dr. Schosheim had the opportunity to consider all of the medical evidence, his testimony was relevant to his area of specialty, and it was consistent with the other substantial evidence in the record, including examination findings and treatment notes from other medial sources. [Tr. 18]. The Court has not found, and the Plaintiff has not cited with specificity, any medical evidence or opinions that contradicts or discredits Dr. Schosheim's opinion.[1] Plaintiff's counsel had the opportunity to cross-examine Dr. Schosheim but failed to elicit any testimony that challenged the conclusions he had reached. [Tr. 53-54]. Furthermore, the Court notes that Dr. Schosheim was retained as a medical expert with regard to the Plaintiff's back impairment only. He was not qualified to opine on the Plaintiff's mental impairment and properly refrained from doing so.

Therefore, the Court finds the Plaintiff's contention is this regard is without merit.

## 2. *Credibility*

The Plaintiff presents some argument about not seeking consistent or routine medical care in response to the ALJ's credibility determination. [Tr. 22 at 7]. In the disability decision, the ALJ discounted the Plaintiff's subjective allegations with regard to his mental impairment

---

[1] While the Plaintiff summarily argues that treatment from his orthopedist contradicts Dr. Schosheim's testimony, the Court notes that the Plaintiff underwent a single orthopedic examination on June 14, 2011, at which time the Plaintiff's sensation, pulses, and reflexes were normal, his strength in his right leg was normal but limited in his left leg, and a referral for an MRI was made. [Tr. 501-02]. The MRI was performed on July 27, 2011, and is the same MRI discussed by Dr. Schosheim. The Plaintiff had no further follow-up appointments, and nothing within the treatment notes for this single visit appears to be at odds with Dr. Schosheim's testimony or opinion.

because the Plaintiff failed "to seek ongoing, intensive treatment." [Tr. 19]. In support of his conclusion, the ALJ noted that during the Plaintiff's November 22, 2011 psychological evaluation with Dr. Chung, the Plaintiff "reported he sought no psychiatric care and took no psychiatric medication." [Id.]. The ALJ concluded, "If the claimant suffered symptomatology to the degree alleged, it is reasonable that he would have sought meaningful treatment to alleviate it." [Id.].

The Plaintiff argues that he was unable to obtain treatment because he was denied Medicare and could not access low-cost medical services. [Doc. 22 at 7]. The Plaintiff explains in his brief, and testified during the administrative hearing, that he was unable to obtain treatment from the local public health clinic because they required an address before services were rendered and the Plaintiff could not provide one due to being homeless. [Id.; Tr. 33-34].

Generally, an ALJ may properly discount a claimant's subjective allegations where there is a lack of contemporaneous evidence of the claimant seeking treatment for the impairments he alleges to be disabling. See Strong v. Soc. Sec. Admin., 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."); see also Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7-8 (July 2, 1996) (stating that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). However, Social Security Ruling 96-7p cautions ALJs to be mindful of the reasons a claimant may have for the lack of consistent or frequent medical care:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering

> any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. . . . The explanations provided by the individual may provide insight into the individual's credibility. For example: . . . *The individual may be unable to afford treatment and may not have access to free or low-cost medical services.

1996 WL 374186, at *7-8.

Here, the Court finds that the record shows that the Plaintiff had access to medical care for most of the relevant time period in question. For example, while the record demonstrates that the Plaintiff began receiving treatment in 2009, three years after his alleged onset date, the Plaintiff does not contend that he was unable to afford treatment prior to this time. Rather, he testified that he had not sought medical care because he was not "the type to go to doctors." [Tr. 35]. Apparently, the Plaintiff only decided to seek treatment once he learned about Social Security benefits. [See id.]. Additionally, the Plaintiff testified that he was able to access medical services in either 2010 or 2011. [Tr. 37]. While the record reveals no treatment in 2010,[2] the Plaintiff did receive treatment for his back in 2011 on four separate occasions at the local public health clinic. [Tr. 474-75, 477-76, 481-82, 501-02]. These treatment notes, however, do not contain any complaints of or treatment for mental impairments despite the Plaintiff's concession that he was able to obtain treatment during this time. Although the Plaintiff points out that during one of his visits in May 2011 he was prescribed Alprazolam (Xanax) [Doc. 22 at 7], treatment notes from this visit do not document any explanation or information regarding the prescription, and only indicate that the Plaintiff complained of and was treated for low back pain. [Tr. 477-78]. Further, by the Plaintiff's own report during his

---

[2] The record contains a correspondence from Jackson Memorial Hospital in Miami, Florida, dated February 26, 2010, in regard to a records request. [Tr. 446]. The correspondence states that no records were available, citing that the Plaintiff "registered but didn't come in for treatment." [Id.].

November 2011 psychological evaluation with Dr. Chung, he stated that he did not take any psychiatric medication. [Tr. 494].

Moreover, to the extent that the Plaintiff was unable to access low-cost medical services due to an inability at times to provide an address as a result of being homeless, the Court finds that any period of homelessness was transient in nature. The Plaintiff testified that he was homeless in 2009, albeit for an indeterminate amount of time, [Tr. 38], and became homeless again in July 2013, two months before the administrative hearing, [Tr. 41]. These two periods of time simply do not explain the absence of any treatment for a mental impairment over a six-and-a-half-year timeframe (*i.e.*, between August 1, 2006, the alleged onset date, through January 13, 2014, the date of the ALJ's decision). The Court also notes that the Plaintiff had the option to leave Miami, Florida and live with his parents in Tennessee "in a nice house in the mountains" after he became homeless in July 2013. But he said that living in Tennessee is "not my choice." [Tr. 41, 44].

Based upon the foregoing, the Court finds that the ALJ did not err in concluding that the lack of treatment for a mental impairment weighed against the Plaintiff's credibility. Accordingly, the Plaintiff's argument to the contrary is unpersuasive.

### 3. *Consultative Examiner Nicola Chung, Ph.D.*

The Plaintiff avers that the ALJ did not properly weigh the psychological evaluation conducted by Dr. Chung in November 2011. [Doc. 22 at 5].

During the evaluation, the Plaintiff reported that he became depressed following the onset of his back injury, which has caused insomnia, irritability, difficulty concentrating, forgetfulness, loss of interest in things, tearfulness, isolation from others, as well as nightmares, flashback, and intrusive thoughts about the incident with the correctional officers. [Tr. 493]. Dr. Chung opined

20

that while the Plaintiff appeared to be of low average intelligence and did not respond appropriately to questions regarding simple social situations, he demonstrated fair insight and abstract reasoning, the ability to concentrate and attend to stimuli, and displayed appropriate motor activity; he exhibited adequate frustration tolerance; his fund of information was adequate; his short-term memory seemed impaired but his long-term memory was intact; and he exhibited appropriate social judgment and behaved in a predictable manner.  [Tr. 493-94].  In conclusion, Dr. Chung diagnosed the Plaintiff with dysthymic disorder and PTSD and recommended mental health and psychiatric treatment.  [Tr. 494].

The Plaintiff argues that the diagnoses assessed by Dr. Chung were overlooked by the ALJ who also improperly weighed the effect of his dysthymic disorder and PTSD.  [Doc. 22 at 5].  The Court disagrees.  First, the ALJ discussed Dr. Chung's psychological evaluation and specifically noted that the Plaintiff was diagnosed with dysthymic disorder and PTSD.  [Tr. 19].  The ALJ observed, however, that Dr. Chung found that the Plaintiff demonstrated fair insight and abstract reasoning skills, his concentration was intact, and he could accurately perform mental manipulations.  [Id.].  Therefore, the Plaintiff's contention that Dr. Chung's evaluation was overlooked is without merit.  Second, the mere diagnoses of dysthymic disorder and PTSD says nothing about its effects on the Plaintiff's functional abilities.  See Higgs, 880 F.2d at 863 ("The mere diagnosis [of a disease], of course, says nothing about the severity of the condition."); see also Alvarado v. Weinberger, 511 F.2d 1046, 1049 (1st Cir. 1975) ("The mere existence of a psychoneurosis or an anxiety reaction does not constitute a disability.").  As explained in Foster v. Bowen,

> The mere fact that plaintiff suffered from a dysthymic disorder prior to September 4, 1985, does not automatically entitle plaintiff to the receipt of benefits.  Rather, in order to qualify for the receipt

of benefits for the period of time preceding September 4, 1985, plaintiff must show that she was *disabled* by her dysthymic disorder.

853 F.2d 483, 489 (6th Cir. 1988) (emphasis in the original) (citation omitted).

Here, while the Plaintiff argues that his diagnoses are "traumatic illnesses" that have caused constant depression and anxiety [Doc. 22 at 5], Dr. Chung largely opined normal findings, remarking that the Plaintiff had fair insight and abstract reasoning, could concentrate and attend to stimuli, displayed appropriate motor activity, exhibited adequate frustration tolerance and appropriate social judgment, and behaved in a predictable manner. Moreover, Dr. Chung did not assess any specific functional limitation or restriction despite the Plaintiff's diagnoses. The Court also observes that the lack of any mental health treatment within the record further supports a finding that the Plaintiff does not have any non-exertional limitations beyond that which was found by the ALJ.

Therefore, the Court finds no merit in the Plaintiff's argument that Dr. Chung's psychological evaluation, or the findings therein, were ignored by the ALJ.

### D.     Existence of Other Work in the National Economy

Finally, the Plaintiff takes issue with the ALJ's consideration of the Plaintiff's age and education at step five of the sequential evaluation. [Doc. 22 at 7]. In this regard, the Plaintiff argues that his age has nothing do with the pain and suffering he has alleged, nor does his education. [Id.]. Moreover, the Plaintiff questions how the ALJ is able to determine whether he can meet an employer's criteria given his impairments. [Id. at 8].

While a claimant has the burden of proof at steps one through four, the burden shifts to the Commissioner at step five to prove that other work exists in the national economy that the

claimant can perform. <u>Walters</u>, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520(a)(1)). In determining whether other work exits, the Commissioner must take into account the claimant's RFC and vocational factors, including age, education, and work skills. 20 C.F.R. §§ 404.1520, 416.920. A claimant's age is a relevant factor because it may affect whether, and how easily, an individual is capable of adjusting to other work. §§ 404.1563, 416.963. Similarly, a claimant's educational training, or the lack thereof, may affect an individual's ability to meet vocational demands of a job. §§ 404.1564, 416.964.

In many cases, the Commissioner may meet her step five burden by applying the applicable Medical-Vocational Guideline ("the grids") rule, which based upon the claimant's age, education, and whether he has transferable job skills, will indicate a finding of "disabled" or "not disabled." <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 548 (6th Cir. 2004) (citing <u>Wright v. Massanari</u>, 321 F.3d 611, 615 (6th Cir. 2003); <u>Burton v. Sec'y of Health & Human Servs.</u>, 893 F.2d 821, 822 (6th Cir. 1990)). Essentially, the grids allow the Commissioner to take administrative notice that jobs are available in the national economy in which a claimant is capable of performing without having to consult additional evidence. <u>See Kirk</u>, 667 F.2d at 529. However, if a claimant suffers from non-exertional limitations or cannot perform substantially all of the exertional demands of a job at a given exertional level, the grids only provide a framework for the Commissioner's decision, and the Commissioner must utilize other evidence, such as testimony from a vocational expert ("VE"), to determine whether work exists in the national economy which the claimant can perform. <u>Wilson.</u>, 378 F.3d at 548 (citations omitted).

In this case, the Court finds that the ALJ did not err at step five. First, the ALJ properly took into consideration the Plaintiff's vocational factors, including his age and education, as directed by the regulations. [Tr. 20]. Second, the ALJ properly recognized that the grids only

served as a framework for decisionmaking in this case, because the Plaintiff was found to be unable to perform a full range of sedentary work. [Tr. 16, 20]. Accordingly, the ALJ utilized VE testimony by posing a hypothetical question, in which the VE was asked to consider whether work existed for a hypothetical individual with the same RFC and vocational factors as the Plaintiff. [Tr. 20, 55-56]. In response, the VE identified three jobs – order clerk, charge-account clerk, and call-out operator – that existed within the national economy that such a hypothetical individual could perform. [Tr. 56]. Because the hypothetical question adequately represented all of the Plaintiff's physical and mental limitations, the ALJ's reliance on the VE's testimony at step five [Tr. 20] provided substantial evidence that other jobs existed within the national economy that the Plaintiff could perform. See Smith v. Halter, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

Therefore, the Court finds no error in the ALJ's step five finding and any argument to the contrary is not-well taken.

## VI.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[3] that the Plaintiff's Motion for Summary Judgment [**Docs. 22**] be **DENIED**, and the Defendant's Motion for Summary Judgment [**Doc. 25**] be **GRANTED**.

Respectfully submitted,

United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).